...to transform the cash into something untraceable, which is a boat. No, you're not buying it? No. Yet. Mr. De Guzman, good morning. Good morning, Judge Torreya, Judge Thompson, Judge Barron. My name is Guillermo De Guzman, and I represent Ms. Priscilla Batista, appellant in this case. Ms. Batista is a handicapped woman who lives in a project administered by defendant's police. She has lived there for over 30 years in the same apartment, same unit, three-bedroom unit. She's a certified handicapped, acknowledged handicapped. When I say acknowledged, there's no controversy, there's no issue as to the fact that she's a legal handicapped. And she has, in the last few years, been denied her request to remain in this apartment based on guidelines regarding family units and family members. Ms. Batista requested what is called reasonable accommodation within the Fair Housing Act, and that was denied such reasonable accommodation. And this case followed through the district court all the way to this court. I must state that this case was assigned to me by the district court. This is a pro bono case. I say this because Ms. Batista is a lady with very, very limited economic resources. She is in this apartment, and she is an eligible member to the Section 8 benefits under HUD precisely because of her limited economic resources. It has nothing to do with her disability condition. Nevertheless, when the police started insisting on her moving from this apartment because of this guideline, she requested reasonable accommodation based precisely on her disability, and she submitted the necessary evidence to sustain medical evidence. Even if we are in a summary judgment stage, or we were in a summary judgment state, she submitted medical evidence that she deserved to remain in this apartment for the particular disability reasons. Now, the district court understood that her claim gave her an economic advantage because it preserved her Section 8 HUD benefits. The district court went as far as to state that this was undue hardship and substantial burden, an economic burden to the police. Thereafter, the police, who had not particularly raised this issue, have trumpeted this over and over in their briefs, in their reply briefs, and so forth. But the fact is that nobody explains to us why there is an economic benefit to Ms. Batista. The truth is that reasonable accommodation, being an exception to all these federal laws dealing with disabled persons, it is also embedded in those same HUD regulations that require X amount of family members. It is an acknowledged exception within that law. Therefore, if Ms. Batista were to be granted reasonable accommodation, there would be no change. There would be no variation. She would remain in the same apartment she is, HUD would remain paying this amount. There would be no financial burden, no financial change for our police. Did they offer her a two-bedroom apartment? They did, Your Honor, and they have emphasized that alternative, but they have not dealt with why accepting her reasonable accommodation would somehow burden them or would somehow affect them in any way. They're only saying, we're trying to comply with regulations. Those same regulations have within them the exception of reasonable accommodation when there is a disability that needs to be taken care of. Nobody has disputed the reasons for her request. The medical evaluation, the medical information that was submitted, all of this within the summary judgment phase. Well, tell me why a two-bedroom is not a reasonable accommodation. Well, she has stated that as part of her disability treatment, she keeps one room as her dwelling room. She keeps another room for arts and crafts and manual labor. She keeps another room where she keeps stationary bicycle and other exercise equipment. I personally went to see this apartment. Believe me, these are very, very small rooms. And that's how she manages her disability, and this is pursuant to doctor's orders. She got the three-bedroom apartment, as I remember, because she had two children. She did, originally, some 30 years ago. How long has she been disabled? She has been disabled, I would say, for the last 10 years, something like that. Actually, she wasn't in an economic disadvantage all throughout this time. She became disadvantaged, I would say, also by that time, 10 years, maybe 15 years ago, when she lost her capacity to work because of her disability. So that's when she applied for the Section 8 benefits and so forth. Well, the question I have in my mind is, she was living in that three-bedroom apartment with two children and with her disability and all the equipment required by her disability. Not precisely at the same time. Her children, by the time her disability regrew, they were already grown-ups, and one of them got married first and then the other one, and they left. She has been accommodating herself within this apartment, and she has explained to our police and to doctors how she manages this. The thing that changed her Section 8 eligibility status was the departure of the children, right? No. What changed it from three to two, from three-bedroom to two-bedroom? Why under Section 8 are they now saying you have to be in a two-bedroom? Well, the regulations of the Housing and Urban Development have a standard, a normal standard as to the amount of persons in each apartment in relation to the amount of rooms. And so she originally was entitled to a three-bedroom because of her children. Definitely. Okay. Now she's entitled to a two-bedroom under the reg. That's presumably because the children left? Yes, if the conditions were normal. No, I understand. Just forget the reasonable accommodation point. Just trying to figure out Section 8. Yes. So, the thing that she went from three-bedroom to two-bedroom because, in the eyes of HUD, the children left. Yes? Yes. When? Well, the children left. No, no. On the record as to what HUD treats it, why is HUD suddenly saying you go from entitled to a three-bedroom under Section 8 to a two-bedroom? Well, HUD originally suggested this back in 2006 because of a routine inspection they conducted. Okay. And they didn't act on it? They didn't act on it because our police didn't act on it. Our police acted on it much later, 2011, and this is part of our discrimination retaliation. So, she had five years where there were no children in the three-bedroom with her. She had more than that. More than that. She had more than that. But even though under the regs, just if you took the regs seriously, forget the reasonable accommodation, she really, under Section 8, would not have been entitled to a three-bedroom apartment if HUD had known the children weren't there. Under normal conditions? Under normal conditions. I agree. Those are the guidelines. Those same guidelines have the exception within it, the reasonable accommodation, et cetera, under the particular circumstances. The particular circumstances are here. Can I just understand your argument? Suppose she had a two-bedroom apartment originally, and then the disability developed. Would you claim that under the regs she's entitled to move to a three-bedroom apartment? It's a hypothetical that I cannot answer. Because, you know, people somehow. Well, no, it's a legal question. Do you think the reasonable accommodation argument you're making would entitle her to go from a two-bedroom to a three-bedroom? I understand she's now in a three-bedroom and doesn't want to go to a two-bedroom. But the logic of it seems to suggest that under the regs she is entitled to a three-bedroom apartment. I would have to look at the medical evidence at that time. Well, the same as now. If the medical evidence substantiates such a request, yes. Okay. You're claiming retaliation because of the failure to follow the HUD order, am I correct? That is part of the retaliation claim because there was a separate proceeding within HUD that ended up with a consent order that was later violated. And beyond that, it is our understanding that this second attempt at moving her from the apartment stems from the result of that consent order, that proceeding being that part of the retaliation. And that's why you're appealing to this court? Are you filing a separate action of which that is a part of? No, we understand there was no need to file a separate action, that this was part of the entire original set of facts that include the discrimination, the discriminatory denial of the reasonable accommodation, the retaliation, and we have asked for damages and for injunctive relief. But you're not asking us to enforce the consent decree. No. You say that whatever enforcement rights you have under the consent decree for the retaliation, separate and apart from that, you can bring your own retaliation claim, and the consent decree didn't preclude that. That's it. Is that right? Yes. Thank you. Your time is up. Thank you. Mr. Guzman, you're not related, are you? No, we're not. He is the Guzman. I am only Guzman. Okay. Sorry. No, no problem. Good morning, Your Honors. Your Honors, we begin by saying that there's no issue that the plaintiff in this case is handicapped. As a matter of fact, the cooperativa, my client, has recognized that since many years ago. She had requested before this case reasonable accommodations, and they were given to her. So there's no issue as to that. Although she, in her complaint, has tried to establish that there was discrimination against her, if you look at the record, there's no evidence of that. When she moved in, it was 1983, and she had two daughters. There are some requirements made by HUD and PRAFA, which is the Puerto Rico Housing Finance Authority, which is the one that's delegated to supervise these housing accommodations in Puerto Rico. This is a cooperativa. This is not a condominium. All the residents have to be members of the cooperativa. One of the questions made by the judges to Mr. de Guzman is why she is not right now entitled to a subsidy by Section 8. Well, one of the reasons is that she has not complied with any of the regulations, not only from HUD and PRAFA, but also by the cooperativa, because they have bylaws, and she has not paid her fees, and she has not complied with her duties as a member. And at this moment, and it was indicated in the judgment made by the district court, there is no longer subsidy by Section 8 in the cooperativa. So that's another thing. She hasn't paid her rent for many, many years, and even though that happened, at the moment that she requested reasonable accommodation, the second one, the board of directors considered her case. She only submitted one letter from a psychologist, clinical psychologist, saying that she needed the three rooms, but the board of directors evaluated that, and they said that it was not enough. But not only them, Your Honors, the board requested advice, assistance from PRAFA and HUD, and both of them said that they would comply and that they had to tell the plaintiff that she had two options. Either stay in a three-room apartment and pay the market value of the apartment, or move to a two-bedroom apartment. This is not only two bedrooms or three bedrooms, Your Honor. These apartments have a kitchen, they have a living room, and the one that was offered to her even had a terrace. So it's not that small. When she was questioned, why did she need a three-bedroom apartment, basically, Your Honor, she said that she needed the space because she had a lot of things, files, containers for water, not only the stationary bicycle, but other things. So as required by HUD and PRAFA, the Cooperativa complied with all the instructions. They, out of caution, they requested four times for them to give them instructions, and they did. And they did that. The first evaluation by PRAFA regarding this problem, the housing, the overhouse problem in the Cooperativa, and she was not the only one. There were other people that were in almost the same position. They either complied, they moved out of the Cooperativa, or they started paying their rent, market value rent, or they changed their composition, their family composition, in order to be able to stay in their apartments. She had been offered more than two times at least two-bedroom apartments on the first floor, taking into consideration her disability, and she has refused all the times. At this moment, she's paying rent. At this moment, there are some judgments from a state court. She even appealed one of the collection cases, and she lost it. So it's become a burden to the Cooperativa, because right now she's residing in an apartment, which the Cooperativa is not receiving any payment at all, and that's basically the problem, Your Honor. As to retaliation, Your Honor, I believe that the judgment is clear, that the retaliation claim has no basis at all, because at that moment, when HUD issued the order, it was complied with by the Cooperativa, but it said that all the dues and fees owed to the Cooperativa were those that arise from that claim, from that case, not other cases, and not other issues. She has not paid almost anything regarding the maintenance, regarding the gazebo that was built, she has not paid that. There was a beeper that was issued to every resident, she has not paid that either. So that's basically it, Your Honor. The Cooperativa, in order to comply with the federal regulations, did as they were told. As to the medical evidence that she submitted, it was the same medical evidence that was submitted to HUD, and HUD found no probable cause against the Cooperativa from her claim. I think that would be all, Your Honors.